ESCO FASTENERS, CO., INC. and
Calley and Currier Co., Inc.,
Plaintiffs,

v.

KOREA HINOMOTO CO.,
LTD., Defendant.

No. CV–95–4818.

United States District Court,
E.D. New York.

June 12, 1996.

Steven T. Lane, Ready & Pontisakos, Garden City, New York, for plaintiffs.

Joseph L. Clasen, Robinson & Cole, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

### BACKGROUND

This case stems from an incident which occurred on June 3, 1992, when a bolt snapped on a crutch being used by Matthew J. Noon, thereby causing his fall and resulting injuries. *See* Defendant's 3(g) Statement ¶ 4;[1] Defendant's Ex. B (Noon Substitute Complaint). On January 3, 1993, Noon, a Connecticut resident, filed suit in Connecticut Superior Court against Calley & Currier Co., manufacturer of the crutches, and Esco Fasteners Co., Inc., supplier of the allegedly defective bolt. On August 26, 1994, Esco Fasteners moved to implead Korea Hinomoto, a Korean company, alleging that Korea Hinomoto sold the subject bolt to Esco Fasteners. Calley & Currier then filed a third party complaint against Korea Hinomoto.

On November 28, 1994, Korea Hinomoto moved to dismiss the complaints against it on the grounds that it was not subject to personal jurisdiction in Connecticut. Judge Norko of the Connecticut Superior Court granted that motion on March 9, 1995, holding that to subject Korea Hinomoto to personal jurisdiction in Connecticut would violate its due process rights. *See* Defendant's Ex. C.

Calley & Currier and Esco Fasteners settled the action brought against them by Noon on July 13, 1995. Noon received $80,-000 as full and final settlement of all claims arising from his fall. Defendant's 3(g) Statement ¶ 7.

The present action was brought in this Court by Esco Fasteners and Calley & Currier seeking indemnification and contribution from Korea Hinomoto. Plaintiffs sue under Connecticut common law, the Connecticut Product Liability Act, Conn.G.S. § 52–572(m) et seq., and under New York law for breaches of implied and express warranties and the covenant of good faith and fair dealing. Currently before the Court is Korea Hinomoto's motion for summary judgment on the grounds that Connecticut law cannot apply in this action and that plaintiffs' claims are barred under New York law.

### DISCUSSION

▮ This Court has jurisdiction over this case under 28 U.S.C. § 1332 based on diversity of citizenship. Plaintiff Esco Fasteners is a New York corporation, plaintiff Calley &

---

**1.** Defendant has noted in its Reply Memorandum that plaintiffs have failed to file a 3(g) Statement in connection with this motion. However, plaintiffs have not contended that there are any facts in dispute for purposes of this motion, and the Court therefore accepts the statements in defendant's 3(g) Statement as true.

Currier is a New Hampshire corporation, and defendant Korea Hinomoto is a Korean corporation. It is not disputed that Korea Hinomoto does business in New York and is subject to jurisdiction here. In cases where federal jurisdiction is based upon diversity of citizenship, the district court must apply the law of the state in which it sits. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Application of the forum state's law includes application of its choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Banker v. Nighswander, Martin & Mitchell,* 37 F.3d 866, 871 (2d Cir.1994). Thus, in determining whether the law of New York or Connecticut applies here, the choice of law rules of New York are controlling.

■ As a preliminary matter, however, "[a] court may not apply the local law of another state to determine a particular issue unless application of this law would be reasonable in the light of the relationship of this state and of other states to the person, thing or occurrence involved as to the particular issue." Restatement Conflict of Laws § 9 Comment g. If application of Connecticut law to Korea Hinomoto would violate constitutional principles of due process, Connecticut law could not control this case, regardless of the result mandated by New York choice of law rules. *See Allstate Insur. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981) ("for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests such that choice of its law is neither arbitrary nor fundamentally unfair.").

■ The Connecticut Superior Court has ruled that to subject Korea Hinomoto to personal jurisdiction in Connecticut would violate principles of due process (*see* Defendant's Ex. C), and this Court is bound to give that decision full faith and credit. *See* 28

U.S.C. § 1738; *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 274 (2d Cir.1977) ("The federal court presented with a state court judgment is required to give that judgment the same force and effect as it has in the state in which it was rendered."); *United States v. Private Sanitation Industry Ass'n,* 899 F.Supp. 974, 980 (E.D.N.Y.1994), *aff'd,* 47 F.3d 1158 (2d Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995).[2] Defendant argues that because it is not subject to personal jurisdiction in Connecticut, to subject it to Connecticut law would violate the principles of due process, and that therefore the only possible law that may be applied in this case is New York law.

Defendant's argument is based primarily on a footnote in Justice Stevens' concurring opinion in *Allstate Insur. Co. v. Hague,* 449 U.S. 302, 320 n. 3, 101 S.Ct. 633, 644 n. 3, 66 L.Ed.2d 521 (1980). In that footnote, Justice Stevens explained that "[t]he two questions presented by the choice-of-law issue arise only after it is assumed or established that the defendant's contacts with the *forum* State are sufficient to support personal jurisdiction." *Id.* (emphasis added). However, defendant misconstrues Justice Stevens' statement and its applicability to this case. It is true that the choice of law issue can only arise after the defendant's contact with the forum state are deemed sufficient to support personal jurisdiction. However, the forum state in this action is the state of New York, not the state of Connecticut. Because New York's jurisdiction over the defendant in this case is not disputed, there is nothing in Justice Stevens' concurring opinion to suggest that Connecticut's lack of jurisdiction over Korea Hinomoto bars this Court, sitting in the Eastern District of New York, from applying Connecticut law. Indeed, overlooked by the defendant is the recognition by Justice Stevens in the same footnote that "the Court has made it clear over the years that

---

2. Judgments regarding personal jurisdiction are also entitled to full faith and credit where the jurisdictional issue has been fully and fairly litigated in the original forum. *See Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Baldwin v. Traveling Men's Ass'n,* 283

U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); *Harbuck v. Marsh Block & Co.,* 896 F.2d 1327, 1329 (11th Cir.1990) (citing cases); *Tomai–Minogue v. State Farm Mut. Auto Insur. Co.,* 770 F.2d 1228, 1233 n. 7 (4th Cir.1985) (citing cases).

the personal jurisdiction and choice of law inquiries are not the same." *Id.*

In *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993), the New York Court of Appeals applied the law of Missouri against the third party plaintiff, a New York domiciliary over whom jurisdiction would not exist in Missouri. The defendant misreads *Cooney* when in footnote 3 on page 6 of its Reply Memorandum it writes: "[a]pparently because the argument was not raised, the court did not also decide whether it could constitutionally apply the laws of Missouri to the New York claimant." Quite clearly, the Court of Appeals addressed the issue of jurisdiction over the New York domiciliary (Osgood Machinery) in Missouri by implication if not explicitly. At page 70, the court noted "(Missouri apparently would not have had personal jurisdiction over Osgood)." More pointedly, however, is the court's discussion at page 77, as follows:

> In this case, there is some validity to Osgood's argument that it did nothing to affiliate itself with Missouri. Indeed, a decade after Osgood's last contact with the bending roll, the machine wound up in Missouri through no effort, or even knowledge, of Osgood. Moreover, the record establishes that Osgood was not in the business of distributing goods nationwide, but limited its activities to New York and parts of Pennsylvania, and thus Osgood may not have reasonably anticipated becoming embroiled in litigation with a Missouri employer.

The suggestion in defendant's brief that the New York Court of Appeals was unaware of the constitutional implications of applying Missouri law to a New York domiciliary not subject to the jurisdiction of Missouri is belied by its references to *Allstate Insur. Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1980), and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

■ Because invocation of either the law of New York or the law of Connecticut would be proper, the next question is whether New York's choice of law rules require that its law or the law of Connecticut apply to this case. *Cooney* provides the answer to that question.

■ The traditional choice of law principle that the law of the place where the tort occurred governed all substantive issues in the case was significantly modified by *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), which proclaimed that the better rule would be to determine which jurisdiction had the greatest interest in resolving the issue. That approach, known as the "interest analysis approach," has since been refined to distinguish between the law that regulates the conduct giving rise to the cause of action (e.g., duty and standard of care) and the law that regulates the allocation of loss after liability has been determined (e.g., vicarious liability, contribution and indemnity). With regard to conduct regulating rules, if the laws of competing jurisdictions are in conflict, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing post-event remedial rules are at stake other factors are taken into consideration, chiefly the parties' domiciles." *Cooney* at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (citations omitted). *See also Comer v. Titan Tool, Inc.*, 888 F.Supp. 605, 608 (S.D.N.Y.1995).

What are at stake here are competing postevent or loss allocation rules and the resolution of that conflict must now be addressed.[3] In resolving a similar conflict, the court in *Cooney* looked to the guideposts

---

3. For purposes of this motion the Court assumes without deciding that New York law precludes plaintiffs' claims for contribution, without ruling on the validity of plaintiffs' claims for indemnification under New York law. Although the Court is aware that N.Y.Gen.Oblig.Law § 15–108(c) provides that a tortfeasor who has obtained a release from liability cannot proceed with a claim for contribution against another alleged tortfeasor, that law does not apply to claims for indemnification. *See* Section 15–108, Practice Commentary; *Rosado v. Proctor & Schwartz*, 66 N.Y.2d 21, 23–24, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) ("restating the "important substantive distinctions between contribution and indemnity," and holding that indemnification claims are not barred by § 15–108"); *McDermott v. City of New York*, 50 N.Y.2d 211, 220, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980) (same).

provided by *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), which are as follows: (1) Where the parties share a common domicile, that law should control; (2) Where the parties are domiciled in different states and the local law favors the domiciliary of each respective state, the place of injury should control; and (3) where the parties are domiciled in different states, the law of the place of injury should apply unless "displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Cooney,* 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277. *See also Heisler v. Toyota Motor Credit Corp.,* 884 F.Supp. 128, 131 (S.D.N.Y.1995) ("Although the *Neumeier* rules were developed in the context of guest statutes ... subsequent decisions have made clear that New York courts apply these three principles to loss-allocation cases generally").

■ Where the interest of each state in enforcement of its law is roughly equal, "the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." *Cooney* at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277. Defendant is domiciled in Korea and there is no indication as to what the law of that jurisdiction would require, precluding the application of the second *Neumeier* rule. The parties do not share a common domicile so that the first also is not applicable, which leaves the third rule. Applying that rule would mean that Connecticut law, as the law of the place of injury, controls in this case, unless the invocation of some other law would be more appropriate as indicated.[4] *See Gray v. Busch Entertainment Corp.,* 886 F.2d 14, 15 (2d Cir.1989) (applying Virginia law in case where parties' domiciles differed and tort occurred in Virginia and holding that plaintiff had not met the "heavy burden" imposed on a party wishing to avoid such a choice of law); *Heisler* at 131 (applying third

*Neumeier* rule where the parties were domiciled in different jurisdictions with conflicting loss distribution rules and the locus of the tort was a separate jurisdiction).

Upon the assumption that the law of New York and the law of Connecticut are irreconcilable, a just resolution must be found. In this Court's view, that resolution requires the choice of the law of Connecticut as the choice yielding the most just result. It is that choice which is consistent with the result that would be reached historically, namely the law of the place where the accident occurred. *Venturini v. Worldwide Marble & Granite Corp.,* Dkt. No. 94 Civ. 4435, 1995 WL 606281 (S.D.N.Y. Oct. 13, 1995) (applying Michigan law to claim for indemnification and contribution where underlying tort occurred in Michigan, despite allegations that defendant's negligent acts upon which claim for indemnification was based occurred in New York). By bringing suit in New York, the law of which is asserted to be unfavorable to plaintiffs (the defendants in the underlying Connecticut action), the plaintiffs cannot be said to be shopping for the forum that would favor them.

The reasonable expectations of Esco and Calley when settling the action against them in Connecticut can fairly be said to be that the legal ramifications of that settlement for such purposes as contribution and indemnity would be determined by the law of the place of injury, the law of the place where the action was commenced and the law of the place where the action was settled. By the same token, defendant here could not possibly have had a reasonable expectation that the law of New York would have any relevance to this case, every significant aspect of which occurred in Connecticut.

Finally, application of the law of Connecticut would not offend New York's public policy and "the public policy exception should be reserved for those foreign laws that are truly obnoxious." *Cooney* at 79, 595 N.Y.S.2d 919, 612 N.E.2d 277. *See also Violette v. Armonk*

---

**4.** *But see Curley v. American Airlines, Inc.,* 846 F.Supp. 280, 284 (S.D.N.Y.1994) (interpreting *Cooney* as providing that "[a]ll questions relating to the division or extent of damages to be assessed against the tortfeasor will be decided ac-

cording to the law of the forum, as the government of the situs could have no possible interest in financial transactions between persons who owe it no allegiance and to whom it owes no duty of protection.").

*Assoc., L.P.,* 872 F.Supp. 1279 (S.D.N.Y.1995) (applying *Cooney* ); *Heisler* at 132 ("[t]his burden is a heavy one, and may be carried only by reference to specific state policy embedded in New York State's constitution, statutes, and/or judicial decisions"). In any event, upon the assumption that the application of New York law would be disadvantageous to Esco, a New York domiciliary, and that the law of Connecticut would not, it could be said that the public policy of New York would be served by the choice of Connecticut law.

For all of the foregoing reasons, the defendant's motion for judgment summarily deciding that the law of New York is applicable is denied.

### CONCLUSION

Under New York choice of law principles, Connecticut law applies to this action. Defendant's motion for summary judgment therefore is denied. As the parties have not briefed the question of the validity of plaintiffs' claims under Connecticut law, the Court will leave for another day the determination of this issue.

SO ORDERED.