**Betty Ann HEISLER and John M. Heisler, Plaintiffs,**

**v.**

**TOYOTA MOTOR CREDIT CORPORATION, Defendant.**

**No. 93 Civ. 1770 (KMW).**

United States District Court, S.D. New York.

May 10, 1995.

John Durst, Fuchsberg & Fuchsberg, New York City, for plaintiffs.

Denise O'Connor, O'Connor & O'Connor, White Plains, NY, for defendant.

OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Toyota Motor Credit Corporation moves for summary judgment on the ground that choice of law principles compel the application of New Jersey law in this diversity action, and that, under New Jersey law, defendant is not liable to plaintiffs Betty Ann Heisler and John M. Heisler (together the "Heislers"). Plaintiffs argue that New York law of vicarious liability applies, both because New York's choice of law rules favor the application of New York law in this case, and because defendant has waived its right to invoke New Jersey law. Plaintiffs also argue that even if New Jersey law were to apply, that law is sufficiently unclear on the issue of defendant's liability that summary judgment would not be warranted. For the reasons set forth below, I grant defendant's motion for summary judgment.

## I. Background

On January 16, 1991, while driving through Pompton Lakes, New Jersey, en route to Betty Ann Heisler's place of employment in Wayne, New Jersey, the Heislers were struck by a car driven by Steven West ("West"). Plaintiffs allege that the accident was "a result of the carelessness, recklessness and negligence of the defendant in the ownership, operation, management, maintenance and control" over its car, (Complaint at ¶ 8),[1] and they now seek recompense for the personal injuries sustained by Mrs. Heisler, and for the loss of consortium suffered by Mr. Heisler. The Heislers are New York domiciliaries, West is a New Jersey domiciliary, and the car driven by West had been leased to him by defendant, a California corporation.

## II. Discussion

Summary judgment is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991). Because the parties are in agreement as to the material facts—that is, the domiciles of the relevant parties and the location of the car accident—the court must decide whether, as a matter of law, New Jersey law governs, and, if so, whether the application of New Jersey law compels entry of summary judgment in favor of defendant.

### a. *Choice of Law Analysis*

■ Section 388 of the New York Vehicle and Traffic Law provides:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use. or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

Although the statute speaks of vehicles operated "in this state," New York courts have interpreted § 388 to have extraterritorial effect. *See Sentry Ins. Co. v. Amsel*, 36 N.Y.2d 291, 367 N.Y.S.2d 480, 482, 327 N.E.2d 635, 637 (1975) (noting that "[t]he legislative history of section 388 of the Vehicle and Traffic Law indicates that the Legislature intended to enlarge the vehicle owner's vicarious liability and not to draw a line at the border"); *cf. Farber v. Smolack*, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 251, 229 N.E.2d 36, 39 (1967). Accordingly, if applied to the instant action, section 388 would render defendant liable for injuries sustained by plaintiffs, provided that plaintiffs could prove West's negligence.

■ New Jersey's law governing the vicarious liability of car owners for damage caused by drivers differs substantially from New York's law. Under New Jersey law,

---

1. Although plaintiffs refer to defendant's negligence, the complaint does not set forth one specific allegation of defendant's negligence in maintaining the car, or of defendant's negligent entrustment of the car to West. Moreover, plaintiffs' memorandum in opposition to the instant motion does not contain a single reference to defendant's negligence; it instead proceeds explicitly on the theory of strict vicarious liability. (Pl.Mem. at 2, 6) Accordingly, I view plaintiffs to be claiming that defendant is liable for plaintiffs' injuries solely by virtue of its ownership of the car, driven by West, that injured plaintiffs.

the owner of a vehicle is not liable for the negligence of the driver in the absence of a showing of either an agency relationship between the owner and the driver, or the negligence of the owner in renting or loaning the vehicle to a reckless or incompetent driver. *White v. Smith*, 398 F.Supp. 130 (D.N.J. 1975). Accordingly, "an owner in the business of leasing automobiles may not be held liable for the bailee's negligence absent a showing of agency or negligent choice of bailee." *Buglioli v. Enterprise Rent–A–Car*, 811 F.Supp. 105, 107 (E.D.N.Y.), *aff'd*, 999 F.2d 536 (2d Cir.1993).

■■■ Because the laws of New Jersey and New York are in sharp conflict regarding the circumstances in which an automobile owner is liable for the negligence of a driver, this court must follow the conflict of laws rules of New York, the state in which this court sits. *Buglioli*, 811 F.Supp. at 108 (citing *Klaxton Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).[2]

Until 1963, New York courts confronting choice of law problems in tort actions simply applied lex loci delicti, or the law of the place of the tort, to all substantive issues in the case. While uniform application of lex loci delicti furthered the important goals of predictability and ease of application, the doctrine necessarily was incapable of taking into account the competing policies underlying the conflicting laws of other jurisdictions. That is, by focusing exclusively on the location of the tort, courts ignored "the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues." *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 745, 191 N.E.2d 279, 281 (1963).

In *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), the Court of Appeals reconsidered the mechanical application of the place of injury rule, and adopted instead a more flexible approach to choice of law problems that gave "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock*, 240 N.Y.S.2d at 747, 191 N.E.2d at 283. In crafting the so-called "interest analysis," the *Babcock* court drew a distinction between laws that regulate primary conduct (such as standards of care), and those that allocate losses after the tort occurs (such as vicarious liability rules); the court explained that if rules regulating conduct regulating rules conflict, the law of the jurisdiction where the tort occurred generally will continue to apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But where, as here, competing "postevent remedial rules"

---

**2.** Defendant argues that California law should not be applied in this case. Plaintiffs have not opposed this position. California Vehicle Code § 17151 states, in pertinent part:

> The liability of an owner, bailee of an owner, or personal representative of a decedent imposed by this chapter and not arising through the relationship of principal and agent or master and servant is limited to the amount of fifteen thousand dollars ($15,000) for the death of or injury to one person in any accident and, subject to the limit as to one person, is limited to the amount of thirty thousand dollars ($30,000) for the death of or injury to more than one person in any one accident.

California law imposes limited vicarious liability on car owners, and does not require the party seeking recovery against such an owner to demonstrate an agency relationship between owner and driver. Thus the California law is, in effect, a compromise between the laws of New Jersey and New York.

Defendant argues—and plaintiffs do not dispute—that although California law is relevant to establish that a conflict of law problem exists, the court cannot apply California law to this case, because to do so would violate the United States Constitution. (Def.Mem. at 4–5). In view of the lack of evidence presented as to the sufficiency of contacts between California and the facts of this case, I agree that there is no basis for imposing California law. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313–14, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981) ("[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."); *Diehl v. Ogorewac*, 836 F.Supp. 88, 92 (E.D.N.Y.1993) ("A court may apply the law of any state wherein the defendant is subject to *in personam* jurisdiction provided that state has sufficient interest in the dispute such that application of its law does not offend the Due Process Clause or the Full Faith and Credit Clause of the United States Constitution.").

are at stake, other factors should be taken into consideration—factors including the parties' domiciles and the locus of the tort. *Id.,* 240 N.Y.S.2d at 749, 191 N.E.2d at 285.

To facilitate even-handed, predictable judicial application of this new interest analysis, the New York Court of Appeals in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), set forth three specific rules to guide courts confronted with conflict of laws problems:

1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine standard of care which the host owes to his guest.

2. When the driver's conduct occurred in the state of his domicile, and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed on him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

3. In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Neumeier,* 335 N.Y.S.2d at 67–68, 286 N.E.2d at 457–58. Although the *Neumeier* rules were developed in the context of guest statutes—those concerning drivers and passengers—subsequent decisions have made clear that New York courts apply these three principles to loss-allocation cases generally. *See Barkanic v. General Admin. of Civil Aviation of P.R.C.,* 923 F.2d 957, 963 (2d Cir. 1991) (noting that "it appears to us that New York courts would now apply the Neumeier rules to all post-accident loss distribution rules"); *Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 923, 612 N.E.2d 277, 281 (1993).

The New York Court of Appeals regards rules governing vicarious liability as loss allocating, not conduct regulating, *see, e.g., Farber,* 282 N.Y.S.2d at 250–251, 229 N.E.2d at 38–39, and the parties here agree that the instant dispute involves a conflict between loss-allocating laws. (Pls.' Mem. at 4, Def.'s Mem at 8) Had conduct regulating been at issue in this case, my analysis would be greatly simplified, for, as noted *supra,* the traditional rule of lex loci delicti is almost invariably employed in that context. Similarly, if the parties shared the same domicile, I would apply that jurisdiction's loss distribution law. *See Barkanic,* 923 F.2d at 962 (finding that the *Neumeier* rules direct courts "to apply the law of the place of the accident unless plaintiff and defendant were domiciliaries of the same state"). However, because the parties are domiciled in different jurisdictions with conflicting loss-distribution rules, and the locus of the tort is a separate jurisdiction, I turn to the third *Neumeier* rule, the rationale for which was recently stated as follows:

Assuming that the interest of each state in enforcement of its law is roughly equal . . . the situs of the tort is appropriate as a "tie breaker" because that is the only State with which both parties have purposefully associated themselves in a significant way.

*Cooney,* 612 N.E.2d at 281.

The "tie breaker" in this case is the law of New Jersey, and, accordingly, the law of New Jersey law should be applied unless its displacement would, as the court in *Neumeier* stated, "advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier,* 286 N.E.2d at 458. *See also Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 98, 480 N.E.2d 679, 687 (1985). Plaintiffs have not demonstrated that the substitution of New York law would advance the purposes underlying section 388 without simultaneously undermining multi-

state litigation (by, for instance, encouraging forum shopping, or by appearing to favor the local party) or producing uncertainty for litigants. *See Gray v. Busch Entertainment Corp.,* 886 F.2d 14, 15 (2d Cir.1989) (placing burden of justifying substitution of New York law on party seeking to avoid application of law of place of injury); *cf. Connaughton v. National R.R. Passenger Corp.,* 809 F.Supp. 1, 2 (E.D.N.Y.1992).[3]

Plaintiffs *do* suggest that the application of New Jersey law would frustrate New York State public policy. Under New York state's conflict of law rules, the party seeking to avoid the application of a foreign law by invoking the policy exception must first establish that the foreign law violates "some fundamental principle of justice, some prevalent conception of good morals, some deep rooted tradition of the common weal," *Loucks v. Standard Oil Co.,* 224 N.Y. 99, 111, 120 N.E. 198 (1918) (Cardozo J.). This burden is a heavy one, and may be carried only by reference to specific state policy embedded in New York State's constitution, statutes, and/or judicial decisions. *Schultz,* 491 N.Y.S.2d at 99, 480 N.E.2d at 688. Because plaintiffs have failed to (1) specify which New York state public policy would be offended by reliance on New Jersey law, and (2) point to any legal or legislative authority suggesting the existence of such a policy, plaintiffs have not met their burden of showing that the application of New Jersey law would violate any public policy of New York State. Moreover, assuming *arguendo* that I were to conclude that the concept of vicarious liability for car owners for the negligence caused by drivers *is* deeply rooted in the common weal, I note that plaintiffs must establish "not only

that the foreign law is contrary to New York public policy, but ... also that there are enough important contacts between the two parties, the occurrence and the New York forum to implicate New York's public policy and to preclude enforcement of foreign law." *Reale v. Herco, Inc.,* 183 A.D.2d 163, 589 N.Y.S.2d 502, 505. (1992). Plaintiffs provide *no evidence* that defendant has the requisite contact with plaintiffs or with New York state to warrant imposition of the public policy exception; rather, they simply assert, in their memorandum of law, that defendant, "upon information and belief, conducts substantial business and derives substantial benefits from doing business in New York," and that "both parties are related to New York in significant ways." (Pls.' Mem at 6). These conclusory statements—unsupported by a single affidavit—are insufficient to establish a strong relationship between New York and the instant case to warrant imposing the public policy exception. *See National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989) (observing that, on summary judgment, the non-moving party bears the burden of presenting specific facts showing that a genuine issue for trial exists); *Harry Winston, Inc. v. Waldfogel,* 292 F.Supp. 473, 476 (S.D.N.Y.1968) (noting that "[t]he briefs are not a source of evidence").[4]

### b. *New Jersey Law*

Contrary to plaintiffs' claim, (Pls.' Mem. at 2), New Jersey law regarding the vicarious liability of car owners is well established. As noted *supra,* under New Jersey law, a car owner may be found liable for the negligence of the driver only if the party seeking to recover can show either that an

---

**3.** I note that the facts in this case are distinguishable from those in *Diehl v. Ogorewac,* 836 F.Supp. 88 (E.D.N.Y.1993), where the district judge determined that, pursuant to the third *Neumeier* rule, the law of the place of injury should be displaced in favor of New York law. There the court found that because the laws of the states where plaintiff and defendant were domiciled were virtually identical, it made no sense to impose the law of the state where the accident happened to have occurred. The court reasoned that "the multi-state system will best be served by applying the law of the forum when it is substantially identical to the domiciles of both plaintiffs and defendants," and that imposing

New York law would both "[hold] parties to a standard of care consistent with the law of their domicile," and would "[evidence] no bias in favor of any litigant."

**4.** Plaintiffs also argue that defendant has waived its right to raise the applicability of New Jersey law because defendant did not raise the issue as an affirmative defense. Given both the absence of support for plaintiffs' position, and my view that defendant may well have been correct not to interpose the defense of New Jersey law before obtaining discovery from plaintiff, I find plaintiffs' waiver argument to be without merit.

agency relationship existed between the owner and the driver, or that the owner was negligent in entrusting the vehicle to the driver. *See White*, 398 F.Supp. at 135. The rule that an owner's liability turns on a showing of agency or negligent entrustment has been held specifically to encompass the case of a company or an individual, in the business of leasing cars, who is subsequently sued by a party injured by the lessee. *See, e.g., Haggerty v. Cedeno*, 267 N.J.Super. 114, 630 A.2d 848, 849–50, 852 (Law Div.1993), *aff'd*, 279 N.J.Super. 607, 653 A.2d 1166 (App.Div. 1995). In order to prevail, then, plaintiffs in this case must show either an agency relationship between West and defendant, or that West's incompetence or untrustworthiness rendered defendant's decision to rent him a car negligent.

New Jersey law does impose a presumption that the driver of a car is the agent of that car's owner; this presumption alone will suffice to "create a prima facie case and throws the burden of showing non-agency on the defendant." *Kauffman v. Gullace*, 252 N.J.Super. 467, 600 A.2d 143, 147 (App.Div. 1991) (citations omitted). The presumption may be rebutted upon an uncontradicted showing that no employer-employee or principal-agent relationship exists. *Harvey v. Craw*, 110 N.J.Super. 68, 264 A.2d 448, 451 (App.Div.1970). Because defendant has presented *uncontradicted* evidence that West was acting neither as an employee, nor an agent, (Pickett Aff. ¶¶ 3–4), it is entitled to summary judgment on any agency-related claim based on New Jersey state law. Plaintiffs also present no evidence—indeed, do not even allege—that defendant was negligent in leasing the car to West; I thus conclude that defendant is entitled to summary judgment under any theory of negligent entrustment.

### III. Conclusion

For the reasons stated above, defendant's motion for summary judgment is granted. The clerk of the court is directed to dismiss the complaint with prejudice, and without costs to either party.

SO ORDERED.