**Maryann E. McCANN, Plaintiff,**

v.

**Gregory D. SOMOZA and Miguel G. Somoza, Defendants.**

**No. 95 Civ. 756.**

United States District Court, S.D. New York.

July 26, 1996.

Robert A. Lubitz, Chestnut Ridge, NY, for plaintiff.

Rivkin, Radler & Kremer by Craig Rizzo, James P. Nunemaker, Jr., Uniondale, NY, for defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

In this diversity action arising out of an automobile accident that occurred in Connecticut, plaintiff Maryann E. McCann ("McCann" or "plaintiff") moves for an order declaring that the threshold contained in Connecticut's no-fault statute governs her right to seek recovery for non-economic losses, such as pain and suffering. Defendants Gregory D. Somoza and Miguel G. Somoza (together, the "Somozas" or "defendants") cross-move for a declaration that New York law governs this issue. For the reasons set forth below, I hold that the law of Connecticut governs plaintiff's ability to recover for non-economic losses.

### FACTS

On August 23, 1992, while travelling on Interstate 95 in Connecticut, the car in which plaintiff was riding was allegedly struck from behind by a car driven by defendant Gregory Somoza. McCann and Gregory Somoza were both in Connecticut on pleasure trips. The car driven by Gregory Somoza was owned by defendant Miguel Somoza and was registered in the State of New York. At the time of the accident, plaintiff was domiciled in New Jersey and both defendants were domiciled in New York.

McCann sustained injuries in the accident and incurred medical expenses, which were paid by her no-fault insurance carrier.[1] She commenced this action in the District of New Jersey in July 1994; the action was transferred to this Court in December 1994.

### DISCUSSION

The parties disagree as to which state's no-fault insurance law should be applied to determine whether plaintiff can recover non-economic damages for the pain and suffering she allegedly sustained as a result of the accident. Plaintiff argues that the law of Connecticut, the locus of the accident, should govern this issue. In the alternative, plaintiff argues that, if Connecticut law is not applied, New Jersey law should govern, as she is domiciled in New Jersey. Defendants argue that the law of their domicile, New York, should govern their liability for plaintiff's non-economic losses.

### A. The Conflicting No–Fault Statutes

Under the no-fault statute in effect in Connecticut at the time of the accident, a plaintiff

---

1. In August 1992, plaintiff was insured by General Accident Insurance under a policy issued in New Jersey.

could recover non-economic damages caused by a motor vehicle accident only if the plaintiff had suffered specified injuries or incurred medical expenses over $400. *See* Conn.Gen.Stat. §§ 38a–368(a), 38a–363(b)(1) (1992).[2] New York's no-fault law provides that plaintiffs can only recover non-economic damages when they suffer "serious injury," as defined in the statute. *See* N.Y.Ins.Law §§ 5104(a), 5102(d) (McKinney 1985).[3] Although the parties do not dispute that McCann has incurred medical expenses in excess of $400, the parties disagree as to whether plaintiff has suffered a "serious injury." Thus, if plaintiff has not suffered a "serious injury," as defined in the New York statute, she would recover for her non-economic losses if Connecticut law is applied, but not if New York law is applied. Hence, a potential conflict of laws is presented.

A third option is to apply New Jersey law. The applicable New Jersey no-fault statute contains a threshold requirement similar to that contained in the New York statute, but it appears that plaintiff would be able to sue for non-economic damages in this case because in her insurance policy she selected an option that permits claimants to sue for pain and suffering without meeting the threshold requirements imposed by the New Jersey statute. *See* N.J.Rev.Stat. § 39:6A–8 (1990) (permitting election of "zero threshold" option).

### B. *New York's Choice-of-Law Rules*

■ A federal court sitting in diversity is to apply the choice-of-law rules of the forum state, in this case New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 269–70 (2d Cir.1992); *see also Barkanic v. General Admin. of Civil Aviation of*

*the People's Republic of China*, 923 F.2d 957, 960 (2d Cir.1991) (federal courts are required to apply state choice-of-law rules where state's substantive law governs under *Erie* doctrine).

■ In the tort context, New York applies an "interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001, 1002 (1994); *see Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279 (1963) (rejecting automatic application of *lex loci delicti*, the law of the place where the tort occurred, for an approach that gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation"). Interest analysis requires the court to determine whether the purpose of the law is to regulate conduct or to allocate losses and to identify the significant contacts among the parties and the different states involved. *Padula*, 620 N.Y.S.2d at 311, 644 N.E.2d at 1002.

■ Rules of law that regulate conduct, such as rules of the road, are generally supplied by the law of the place where the tort occurred because that state has "the greatest interest in regulating behavior within its borders." *Padula*, 620 N.Y.S.2d at 311, 644 N.E.2d at 1002 (*citing Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277, 280 (1993)); *see Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95–96, 480 N.E.2d 679, 684–685 (N.Y.1985). Thus, Connecticut law governs the conduct that resulted in the accident giving rise to this case.

---

**2.** Section 38a–368 was repealed in 1993. *See* 1993 Conn.Acts 93–297 § 28 (Reg.Sess.).

**3.** "Serious injury" is defined as

a personal injury which results in death; dismemberment; significant disfigurement; fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a

medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y.Ins.Law § 5102(d) (McKinney 1985).

For loss-allocating rules, which limit liability after the commission of a tort, New York applies the three-part set of rules adopted in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), to determine which state's law should apply. *See Padula*, 620 N.Y.S.2d at 312, 644 N.E.2d at 1003; *see also Barkanic*, 923 F.2d at 963 ("[I]t appears to us that New York courts would now apply the *Neumeier* rules to *all* post-accident loss distribution rules...."). Rules governing an accident victim's ability to sue the car's driver and owner for pain and suffering are clearly loss-allocating, as they limit liability after the occurrence of a tort. *See Padula*, 620 N.Y.S.2d at 312, 644 N.E.2d at 1003 (examples of loss-allocating rules include guest statutes, wrongful death statutes, charitable immunity statutes, and contribution rules) (citations omitted).

Where the issue concerns conflicting loss-allocating rules, the significant contacts are the locus of the tort and the parties' domiciles. *See Schultz*, 491 N.Y.S.2d at 95, 480 N.E.2d at 684. Accordingly, the *Neumeier* rules provide that: (1) where the plaintiff and the defendant are domiciled in the same state, the law of that state should control; (2) where the accident occurred in a state in which only one of the parties is domiciled, and the law of that state favors that party, the law of that state will generally apply; and (3) where the plaintiff and the defendant are domiciled in different states and the accident occurred in a third state, the law of the state where the accident occurred will apply unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier*, 335 N.Y.S.2d at 70, 286 N.E.2d at 458.

New York's choice-of-law rules also provide that a party may avoid the application of another state's law if that party can show that enforcement of the foreign law "would violate some fundamental principle of justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal as expressed in New York's Constitution, statutes and judicial decisions." *Bader ex rel Bader v. Purdom*, 841 F.2d 38, 40 (2d Cir.1988) (*quoting Schultz*, 491 N.Y.S.2d at 99, 480 N.E.2d at 687) (internal quotations omitted); *see Loucks v. Standard Oil Co. of N.Y.*, 224 N.Y. 99, 110–11, 120 N.E. 198 (1918); *accord Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15 (2d Cir. 1989) (noting "heavy burden" placed upon party invoking exception); *Heisler*, 884 F.Supp. at 132.

## C. *Application of the Conflict of Laws Principles*

### 1. *The Third Neumeier Rule*

Here, the third *Neumeier* rule applies, as plaintiff is domiciled in New Jersey, defendants are domiciled in New York, and the accident occurred in Connecticut. *See Schultz*, 491 N.Y.S.2d at 98, 480 N.E.2d at 686 (applying third *Neumeier* rule where plaintiff and defendant were domiciled in different states that had conflicting loss-allocation rules and tort occurred in third jurisdiction); *Heisler v. Toyota Motor Credit Corp.*, 884 F.Supp. 128, 131 (S.D.N.Y.1995). Under this rule, the law of Connecticut would govern unless defendants can show that applying a different state's law "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier*, 335 N.Y.S.2d at 70, 286 N.E.2d at 458. Hence, the purposes behind each state's law must be considered.

### a. *Connecticut's Statute*

The basic purposes of Connecticut's no-fault statute include: guaranteeing prompt payment of benefits; reducing premiums and increasing efficiency; addressing problems with the fault system such as underpayment of large claims and overpayment of minor claims; and reducing pressure on court dockets. *Shelby Mut. Ins. Co. v. Della Ghelfa*, 3 Conn.App. 432, 489 A.2d 398, 403–04 (1985) (*citing Gentile v. Altermatt*, 169 Conn. 267, 363 A.2d 1 (1975), *appeal dismissed*, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 631 (1976)), *aff'd*, 200 Conn. 630, 513 A.2d 52 (1986); *see O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13, 24, 25 (1986).

The threshold contained in the relevant Connecticut statute was designed to enable those who suffer more severe injuries to seek recovery in court, while keeping minor claims from burdening the courts. *Cf. O'Connor,* 519 A.2d at 25. Prior to 1993, injuries that required more than $400 in medical expenses were not considered minor.

### b. *New York's Statute*

■ New York adopted its no-fault statute to address problems associated with the tort system of recovery for victims of automobile accidents including needless expense, inequitable distribution of compensation among accident victims, delays in payment, and excessive litigation in the state court system. *See Goodkin v. United States,* 773 F.2d 19, 21 (2d Cir.1985) (*citing Montgomery v. Daniels,* 38 N.Y.2d 41, 378 N.Y.S.2d 1, 8–9, 340 N.E.2d 444, 448–449 (1975); *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 574, 441 N.E.2d 1088, 1092 (1982) (goal of statute is "to assure prompt and full compensation for economic loss by curtailing costly and time-consuming court trials") (*citing* Memorandum of State Executive Dep't, 1977 McKinney's Session Laws of N.Y. at 2448, 2450).

To achieve these goals, the statute sought to remove minor accident cases from the tort system by prohibiting suits for non-economic damages except where the plaintiff has sustained "serious injury," as defined in the statute. *See Taber v. Niagara Frontier Transit Auth.,* 101 Misc.2d 92, 420 N.Y.S.2d 692, 694–95 (N.Y.Sup.Ct.1979) (one goal of New York's no-fault law was to minimize court congestion by limiting recovery of non-economic damages to cases involving serious injury), *aff'd,* 78 A.D.2d 775, 435 N.Y.S.2d 551 (1980), *appeal dismissed,* 52 N.Y.2d 704, 437 N.Y.S.2d 1027, 418 N.E.2d 1327 (1981). New York's original no-fault legislation provided that the serious injury requirement would be met if the plaintiff had suffered one of a list of enumerated injuries or if the plaintiff's reasonable medical costs exceeded $500. *See Licari,* 455 N.Y.S.2d at 572, 441 N.E.2d at 1090. The New York legislature repealed this provision in 1977, however, when it became clear that the $500 threshold "was too easily met and that the standard was unsuitable to fulfill the purpose of the No–Fault Law." *Id.* at 572, 441 N.E.2d at 1090. Accordingly, New York adopted a purely verbal definition of serious injury to "significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium." *Id.* at 573, 441 N.E.2d at 1090 (*quoting* Memorandum of State Executive Dep't, 1977 McKinney's Session Laws of N.Y. at 2448).

### c. *New Jersey's Statute*

■ New Jersey's no-fault statute was enacted to "reduce the cost of insurance, to eliminate minor tort claims from the judicial system, and to have medical expenses paid promptly." *See Roig v. Kelsey,* 135 N.J. 500, 641 A.2d 248, 251 (1994). To further these goals, the New Jersey statute accords policy-holders a choice between two options: (i) the policy-holder is charged lower premiums but can only sue for non-economic damages if he or she has sustained injuries falling within one of nine statutory categories (the "verbal threshold" or limited tort option) or (ii) the policy-holder pays higher premiums but has an unlimited right to sue for non-economic damages (the "zero dollar threshold" or full tort option). *See id.,* 641 A.2d at 252; N.J.Rev.Stat. § 39:6A–8 (1990); *see also Taylor–Segan v. Rajagopal,* 275 N.J.Super. 286, 645 A.2d 1272, 1274 (App.Div.1994). The New Jersey statute provides a zero dollar threshold option "to remove the incentive to inflate medical bills ... in order to reach some specified monetary threshold." *Oswin v. Shaw,* 250 N.J.Super. 461, 595 A.2d 522, 524 (App.Div.1991) (*quoting* Governor Kean's Reconsideration and Recommendation Statement to Senate, No. 2637–L.1988, c. 119), *aff'd,* 129 N.J. 290, 609 A.2d 415 (1992).

### d. *Comparison of Competing Interests*

Under the third *Neumeier* rule, Connecticut law would normally apply, as the accident occurred in Connecticut. The Somozas argue that the normally-applicable law of Connecticut should be displaced because the occurrence of the accident in Connecticut was fortuitous. To displace the law of the place where the accident occurred, defendants must show that applying New York law would advance the relevant substantive law purposes without impairing the smooth work-

ing of the multistate system or producing great uncertainty for litigants. Defendants cannot do so.

Although applying New York law would advance the general goal of keeping minor accident claims out of the tort system, applying New York's stricter threshold requirement would impair the multi-state system "by appearing to favor the local party." *Heisler*, 884 F.Supp. at 131–32; *see Cooney*, 595 N.Y.S.2d at 923–24, 612 N.E.2d at 281–82. *But see Reach v. Pearson*, 860 F.Supp. 141, 143 (S.D.N.Y.1994) (without discussing *Neumeier* rules, court applied New York law of remedies to action brought by New Jersey plaintiffs against New York defendants for injuries sustained in accident that occurred in Quebec).

Moreover, displacing Connecticut law would cause uncertainty for litigants. Plaintiff purchased her policy in New Jersey and she was in Connecticut when the accident occurred. She had no relevant contacts with New York such that she would have expected New York law to govern her rights with respect to an accident occurring in Connecticut. In contrast, defendant Gregory Somoza voluntarily associated with Connecticut by driving there.

Both New York and New Jersey have an interest in protecting the expectations of their respective domiciliaries and furthering the purposes of their no-fault laws. Where the interests of each state in enforcing its loss-allocation rule are roughly equal, the law of the "situs of the tort is appropriate as a 'tie-breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." *Cooney*, 595 N.Y.S.2d at 923, 612 N.E.2d at 281; *see Esco Fasteners, Co. v. Korea Hinomoto Co.*, 928 F.Supp. 252, 256 (E.D.N.Y. 1996); *Heisler*, 884 F.Supp. at 131–32. As Connecticut is the only state that both parties have voluntarily associated with, it is fair that Connecticut law govern.

Because defendants have not shown that applying New York law will further the relevant substantive law purposes without disturbing the multi-state system or causing uncertainty for litigants, the law of Connecticut applies to the issue of whether plaintiff can recover damages for pain and suffering.

## 2. *The Public Policy Exception*

The Somozas also argue that New York law should be applied because applying Connecticut's $400 threshold in this case would frustrate the public policy underlying New York's no-fault statute. Although New York eliminated its dollar threshold to prevent inflation of expenses, the public policy exception should not be applied simply because New York's statutory scheme differs from that of another state. *Cooney*, 595 N.Y.S.2d at 927, 612 N.E.2d at 285. Rather, "[i]n view of modern choice of law doctrine, resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious." *Id.* As it cannot be said that the $400 threshold is "truly obnoxious" to New York's public policy, defendants' argument is rejected.

### CONCLUSION

For the reasons set forth above, Connecticut law governs plaintiff's ability to seek non-economic damages. Accordingly, plaintiff's motion for a declaration that Connecticut law applies is granted and defendants' cross-motion for a declaration that New York law applies is denied.

SO ORDERED.