**Lidia TKACZEVSKI, Individually and as Administratix of the Estate of Valentin Tkaczevski, Plaintiff,**

v.

**RYDER TRUCK RENTAL, INC., Frank Martz Coach Company, Storage Office Solutions, Inc., and Alvinia Schoof, Defendants.**

No. 95 Civ. 5743(LBS).

United States District Court, S.D. New York.

Sept. 16, 1998.

Kevin Concagh, PC, Myles L. Tintle III, New York City, for Lidia Tkaczevski.

Connors & Connors, PC, Elanor Della Sala, Staten Island, NY, for Ryder Truck Rental.

Thurm & Heller, LLP, Roula Theofanis, New York City, for Frank Martz Coach Co.

Ginsberg, Becker & Weaver, Robert Becker, New York City, for Storage Office Solutions, Inc., Alvinia Schoof.

## MEMORANDUM AND ORDER

SAND, District Judge.

## MEMORANDUM

The Plaintiff, Lidia Tkaczevski, individually and as Administratrix of the Estate of Valentin Tkaczevski, brought suit against the Defendants, Ryder Truck Rental, Inc. ("Ryder"), Frank Martz Coach Company ("Martz"), Storage Office Solutions, Inc., and Alvinia Schoof, alleging negligence as a result of a 1994 automobile accident in Blakesly, Monroe County, Pennsylvania. Presently before the Court are Motions for Summary Judgment pursuant to Fed.R.Civ.P. 56 filed by Defendants Ryder and Martz. For the reasons set forth below, both Motions are denied.

## I. BACKGROUND

The following facts are undisputed.

On December 9, 1994, at approximately 8:26 p.m., Valentin Tkaczevski was fatally injured while attempting to cross a two-lane road designated SR 115 in the town of Blakesly, Pennsylvania. Mr. Tkaczevski parked his car close to the southbound lane of SR 115 and attempted to walk across both lanes of SR 115 toward a coach owned by Defendant Martz. The bus was parked on the shoulder of the northbound lane of the roadway discharging passengers.

In the course of walking from his car toward the bus, Mr. Tkaczevski was struck by a truck owned by Defendant Ryder that had been proceeding north on SR 115. Mr. Tkaczevski received injuries that ultimately proved fatal. At the time of the accident, the truck was being operated by Joseph Peter

Schoof, an agent of Defendants Alvinia Schoof and Storage Office Solutions.

Plaintiff commenced this action on August 3, 1995, and filed the Amended Complaint on June 4, 1996. Defendants Martz and Ryder asserted cross-claims against each other and all other defendants. On March 19, 1998, and April 29, 1998, respectively, Defendants Martz and Ryder moved for summary judgment dismissing the Plaintiff's Amended Complaint and all cross-claims. The Court heard oral argument on both Motions on June 4, 1998, and the Motions became fully submitted on July 31, 1998.

## II. DISCUSSION

### A. *Choice of Law*

#### 1. Overview

■ A federal court sitting in diversity must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, this Court must apply New York choice of law rules. *See Bader v. Purdom*, 841 F.2d 38, 39 (2nd Cir.1988). In the tort context, New York courts perform an "interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001 (N.Y. 1994).

■ When the law at issue concerns standards of conduct, such as rules of the road, a New York court will apply the law of the situs of the tort. *See id.* at 311, 644 N.E.2d 1001; *see also McCann v. Somoza*, 933 F.Supp. 362, 365 (S.D.N.Y.1996). When the rule "prohibit[s], assign[s], or limit[s] liability after the tort occurs"—so called "loss-allocating rules"—New York courts apply a three-part test adopted by the Court of Appeals in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (N.Y.1972). *Padula*, 620 N.Y.S.2d at 312, 644 N.E.2d 1001; *see also McCann*, 933 F.Supp. at 366.

■ The *Neumeier* framework is designed to determine which of two conflicting loss-allocating rules should apply:

1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed on him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

3. In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Neumeier*, 335 N.Y.S.2d at 70. The rule was soon expanded beyond guest-statutes to include other loss-allocating laws, *see Padula*, 620 N.Y.S.2d at 312, 644 N.E.2d 1001 (citing cases), including vicarious liability rules for automobile owners, *see McCann*, 933 F.Supp. at 366.

■ In this case, Plaintiff and the decedent are domiciliaries of New York. Defendant Martz is a Delaware corporation with its principal place of business in Pennsylvania. Defendant Ryder is a Florida corporation with its principal place of business in Florida. Defendants Storage Office Solutions, Inc. and Alvinia Schoof are New Jersey domiciliaries. The situs of the tort is Pennsylvania. Choice of law is not determined *in toto* for an entire litigation but must be analyzed as to each claim in an action. *See Boxer v. Gottlieb*, 652 F.Supp. 1056, 1062 (S.D.N.Y.1987);

*Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 96–98, 480 N.E.2d 679 (N.Y.1985) (performing the *Neumeier* analysis on a party-by-party basis).

## 2. Defendant Martz

The parties do not brief the choice of law issue as to the claims against Martz, and the Court has little difficulty concluding that the law of the situs, Pennsylvania, must govern. The question of Martz's liability for parking its coach on the shoulder of SR 115, allegedly interfering with the flow of traffic along SR 115 and in a zone in which parking was prohibited, is a question of conduct-regulation and *lex loci delicti* "is almost invariably employed" in such a situation. *Heisler v. Toyota Motor Credit Corp.,* 884 F.Supp. 128, 131 (S.D.N.Y.1995).

## 3. Defendant Ryder

Choice of law as to the claims asserted against Ryder presents a more difficult question. The threshold issue in this analysis is whether the loss-allocation rules of the relevant jurisdictions are in conflict. In this case, the Court is concerned with the laws of New York, Florida, and Pennsylvania because the significant contacts for *Neumeier* purposes are, "almost exclusively, the parties' domiciles and the locus of the tort." *Schultz,* 491 N.Y.S.2d at 95, 480 N.E.2d 679. The relevant portion of the New York Vehicle and Traffic Law provides:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

N.Y. Veh. & Traf.Law § 388 (McKinney 1997). Florida reaches a similar conclusion to New York via the common law dangerous instrumentality doctrine and imposes vicarious liability upon the owner of a motor vehicle who voluntarily entrusts it to another. *See Hertz Corp. v. Jackson,* 617 So.2d 1051, 1053 (Fla.1993); *see also Dooley v. Harris,* 714 So.2d 1206, 1998 WL 454044, at *1 (Fla. Dist.Ct.App. Aug.7, 1998).

Under Pennsylvania law, by contrast, "the lessor of a motor vehicle is generally not liable for the negligence of a lessee who operates its vehicle." *Strouss v. Seidle,* 1997 WL 277340, at *1 (E.D.Pa. May 21, 1997) (citing *Jahn v. O'Neill,* 327 Pa.Super. 357, 475 A.2d 837 (Pa.Super.Ct.1984)). Because Ryder is presumptively liable for the lessee's negligence in both New York and Florida but not Pennsylvania, the laws of the three jurisdictions are in conflict and this Court must perform a *Neumeier* analysis to determine the appropriate choice of law. *See Heisler v. Toyota Motor Credit Corp.,* 884 F.Supp. 128, 130 (S.D.N.Y.1995).

The Court believes that this case implicates both the first and third *Neumeier* principles. The third *Neumeier* rule controls when, as here, the parties are not domiciled in the same state and neither is domiciled in the state of the situs. That rule presumes application of the law of the situs as a default. However, when considering conflicting loss-allocating rules, such as vicarious liability laws, "the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy." *Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1, 13 (2nd Cir.1996) (quoting *Datskow v. Teledyne Continental Motors Aircraft Prods.,* 807 F.Supp. 941, 944 (W.D.N.Y.1992) (quoting *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 96, 480 N.E.2d 679 (N.Y.1985))). The presumption dictating application of the law of the situs is overcome when applying another state's law will "advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Sheldon v. PHH Corp.,* 135 F.3d 848, 854 (2nd Cir.1998) (quoting *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454 (N.Y.1972)).

Although by its terms, the third *Neumeier* principle controls this case, the purposes behind the first *Neumeier* rule inform our analysis regarding whether special circumstances exist encouraging departure from the law of the situs. The first *Neumeier* rule applies when the plaintiff and defen-

dant are co-domiciliaries but the tort at issue occurred in another state. Under this rule, a court must apply the law of the joint domicile because that state has contacts with both parties and neither can complain of upset expectations about the law ultimately chosen. *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 923, 925, 612 N.E.2d 277 (N.Y.1993)

The reasoning behind the first *Neumeier* rule has force in this litigation because both New York and Florida have similar rules governing automobile owners' vicarious liability. Both states attempt to insure that accident victims receive a full recovery and both believe that owners, rather than victims, should bear the risk of loss associated with accidents. To disregard the expectations of New York and Florida domiciliaries in favor of Pennsylvania law simply because the accident occurred in Pennsylvania is illogical. *See Cooney*, 595 N.Y.S.2d at 925, 612 N.E.2d 277 (including in the *Neumeier* analysis parties' expectations regarding what law would govern their behavior); *Schultz*, 491 N.Y.S.2d at 98, 480 N.E.2d 679 (same). Pennsylvania has no interest in limiting the recovery of a New York plaintiff from a Florida defendant. *See Diehl v. Ogorewac*, 836 F.Supp. 88, 93 (E.D.N.Y.1993); *cf. Sheldon v. PHH Corp.*, 135 F.3d 848, 854 (2nd Cir.1998) (refusing to apply Michigan law allowing cause of action for loss of parental consortium to an accident that occurred in Michigan between nonresidents because "Michigan can have no appreciable interest in securing that recovery for" nonresidents).

■ Therefore, the Court believes that special circumstances exist warranting an exception from the presumption of lex loci delicti established in the third *Neumeier* rule. Moreover, allowing New York's or Florida's vicarious liability rule to apply in this case does not encourage forum-shopping, *see Cooney*, 595 N.Y.S.2d at 923, 612 N.E.2d 277 (explaining that forum-shopping is minimized when the law of a common domicile is applied "because the same law will apply whether the suit is brought in the locus jurisdiction or in the common domicile"), and displacing Pennsylvania law promotes the smooth working of the multistate system. *See Sheldon*, 135

F.3d at 854 (applying New York law after concluding that situs had minimal interest and use of New York law would not promote forum-shopping); *Schultz*, 491 N.Y.S.2d at 98, 480 N.E.2d 679. So long as both parties' domiciles follow a similar legal regime, neither can claim disadvantage or local bias at that law's application, for the law is identical in both the plaintiff's and defendant's courts.

In sum, we believe it would be a mistake to resolve the conflict of laws in this case using the "tie breaker" of situs. *Cooney*, 595 N.Y.S.2d 919 at 923. Both New York and Florida reached similar conclusions regarding vicarious liability in the automobile tort context and this Court sees little reason to apply Pennsylvania's contrary law given that state's comparatively low interest in answering this question of loss-allocation.

■ As to which law should displace that of Pennsylvania, New York's or Florida's, this Court finds New York law to be the superior choice. All parties to the litigation had contact with New York. (*See* Theofanis Aff., Feb. 6, 1998, at ¶¶ 4, 6.) By creating a nationwide rental network and renting this particular truck from a New Jersey office, (*see* Connors Reply Aff., July 31, 1998, at ¶ 4) Ryder could reasonably expect that the truck would travel on New York roads or interact with New York drivers, thus subjecting the company to New York law. Most importantly, New York courts have read § 388 to have extra-territorial effect. *See Heisler v. Toyota Motor Credit Corp.*, 884 F.Supp. 128, 129 (S.D.N.Y.1995) (citing cases). A New York court would find New York's interest in securing complete recovery for one of its residents to be far weightier than any interest Florida may have. *Cf. Sheldon*, 135 F.3d at 854 (explaining the situs state's low interest in permitting recovery by a non-resident); *Buglioli v. Enterprise Rent–A–Car*, 811 F.Supp. 105, 108 (E.D.N.Y.) (same), *aff'd*, 999 F.2d 536 (2nd Cir.1993).

Another court recently reached a similar conclusion on facts analogous to these. *See Diehl v. Ogorewac*, 836 F.Supp. 88, 92–94 (E.D.N.Y.1993). In that case, a New York passenger injured in a North Carolina automobile accident brought suit against the driver, a New Jersey domiciliary. The defen-

dant raised affirmative defenses based on the victims' failure to wear safety belts. The defenses were allowed by North Carolina law but not by New York's and New Jersey's. The court determined that New York law, rather than the law of the situs, should govern:

> Although *Neumeier* One is facially inapplicable to the present dispute since the parties reside in different states, this Court finds their diversity to be of no moment where the substantive law of each domicile is harmonious.... [P]arties to the present dispute have voluntarily aligned themselves with states that share a common perspective on this issue of law....

*Id.* at 93. The court noted that because "neither party resides in North Carolina, that state will be neither benefitted nor burdened by the outcome of this case." *Id.* Finally, the court concluded that applying New York law would not encourage forum-shopping but would promote "certainty and predictability." *Id.* at 94.

Application of New York law to the claims asserted against Ryder promotes the smooth operation of the multistate legal system, does not encourage forum-shopping, offers certainty and predictability to the parties, and gives weight to the determination of both states that owners, rather than accident victims, should bear the risk of loss. Accordingly, Ryder's motion for summary judgment will be governed by New York law.

### B. *Legal Standard*

#### 1. Overview

The Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56. Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-moving party, there is no genuine issue of material fact. *See Brown v. City of Oneonta*, 106 F.3d 1125, 1130 (2d Cir.1997). This device is a "drastic procedural weapon because 'its prophylactic function, when exercised, cuts off a party's right to present his case to the jury,'" and thus the court must apply the aforementioned standard to all evidentiary facts, regardless of whether such facts are ascertained directly or inferentially. *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988) (citation omitted).

#### 2. Defendant Martz's Motion

Martz states that Plaintiff's decedent, who was neither a passenger nor an intended passenger of Martz, (*see* Martz's R. 56.1 Statement, at ¶ 2) attempted to cross SR 115 toward a Martz coach parked at a designated bus stop. (*See id.* at ¶ 3.) According to Martz, the bus was positioned completely off of SR 115 out of the flow of traffic, (*see id.* at ¶ 3) and had no impact on the path of the Ryder truck that struck the victim. (*See* Theofanis Aff., Feb. 6, 1998, at ¶¶ 12–13.) Plaintiff and Defendants Storage Office Solutions and Alvinia Schoof maintain that the Martz bus was parked in a no parking zone, (*see* Pl's Mem. Opp., at 6; Storage Office Solution's & Alvinia Schoof's Mem. Opp., at 2.) thus rendering Martz negligent per se under the Pennsylvania statute that prohibits vehicles from stopping or standing on the side of any roadway except under limited circumstances. *See* Pa.Cons.Stat.Ann. § 3353(a)(1)(i) (West 1997). Conceding the applicability of the statute, Martz counters that one of the statute's exceptions allows parking beside a roadway when "authorized by local ordinance," *id.* at § 3353(a)(1)(i)(B), and that the stop must have been legally designated because no citation was issued to the driver of the bus by the police officer on the scene. (*See* Martz's Reply Mem., at 1–2.)

The record contains evidence that the Martz bus was parked near a no parking sign, (*see* Martz's Exhibit E, at 41) and Martz points to no authority—aside from its own internal policies and statements (*see* Martz's Reply Mem., at 1)—by which this Court can determine that the bus stop at issue was designated by law, as opposed to being designated merely by past corporate practice.[1] To grant Martz summary judg-

---

**1.** Although Martz quotes the language in § 3353 that allows "[s]tanding or parking for the purpose of loading or unloading persons or property

... [when] authorized by local ordinance," (Martz's Reply Mem., at 1) Martz never points to any such ordinance in this case. The Court

ment because the police officer on the scene did not issue the bus driver a citation or list Martz as a cause of the accident in the police report, (*see* Martz's Reply Mem., at 2) would be to substitute that officer's conclusions for those of the finder of fact.

Martz further urges that even if it was in violation of the statute, it cannot be found negligent per se because there has been no showing that it was the proximate cause of the decedent's injuries. (*See id.*) Martz explains: "[E]ven if the bus stop had been marked by a sign or shelter, Mr. Tkaczevski would have crossed the roadway of his own accord...." (*Id.* at 3.) Martz's reasoning implicitly assumes that the act of legally designating a stop sign consists of nothing more than placing a "Bus Stop" sign or a shelter at the location. Yet if Blakesly had decided to designate a legally appropriate stop, the town likely would have done more than simply locate a shelter on an otherwise unsafe section of roadway. Presumably, the town would only designate a stop in an area made safe for pedestrian crossing, perhaps with a stop light, a crosswalk, a stop sign, or by using a different portion of SR 115 altogether. Considering all facts and inferences in the light most favorable to the non-moving party, this Court finds that a finder of fact could conclude that the Martz bus was illegally stopped and that such positioning proximately caused Plaintiff's decedent's injuries.

▇ Martz finally argues that, as a matter of law, it cannot be liable due to the decedent's own negligence in causing the accident. (*See* Theofanis Aff., Feb. 6, 1998, at ¶ 15; Martz's Reply Mem., at 6.) The facts indicate that the decedent attempted to cross the road at night, while wearing dark clothing, and may have proceeded at such an angle as to preclude his view of northbound automobile traffic. (*See* Martz's R. 56.1 Statement, at ¶ 3; Theofanis Aff., Feb. 6, 1998, at ¶¶ 7, 9; Storage Office Solution's & Alvinia Schoof's R. 56.1 Statement, at ¶¶ 3–4.) Pennsylvania follows a regime of comparative negligence. *See* 42 Pa.Cons.Stat.

Ann. § 7102 (West 1997). The Pennsylvania Comparative Negligence Act bars recovery by a plaintiff only when his own negligence exceeds that of the defendant's. *See Elder v. Orluck*, 511 Pa. 402, 515 A.2d 517, 517–18, 525 (Pa.1986).

▇ Summary judgment is inappropriate to apportion comparative fault, especially given the conflicting evidence regarding where the decedent was standing at the time of the accident (*compare* Martz's Exhibit C, at 64, *and* P's R. 56.1 Statement, at ¶ 5, *with* Martz's Exhibit F, at 4) and how long he had spent on the road prior to the collision. (*Compare* Martz's Exhibit C, at 62, 86, *with* Martz's Exhibit F, at 3.) Moreover, the limited eye-witness deposition testimony regarding Mr. Tkaczevski's behavior immediately prior to the accident belies Martz's contention that he proceeded across SR 115 without looking back at northbound traffic. (*See* Martz's Exhibit C, at 64.) In short, there are numerous factual discrepancies regarding the extent to which Plaintiff's decedent may have been negligent in crossing SR 115. Determination of whether his alleged comparative negligence is greater or less than Defendant Martz's is precisely the type of issue ill-suited for resolution at the summary judgment phase.

We find the remainder of Martz's arguments to be without merit. Accordingly, Defendant Martz's Motion for summary judgment is denied.

### 3. Defendant Ryder's Motion

▇ Ryder conceded in the papers submitted to the Court that if New York law governed the question of its vicarious liability, summary judgment would be inappropriate. (*See* Ryder's Mem., at 4 ("[I]f New York law applied to this action Section 388 [of the New York Vehicle and Traffic Law] would render defendant, RYDER liable....").) Because New York law governs the relevant claims, Ryder's liability is inex-

---

assumes that if Blakesly had exempted Martz from § 3353, Martz would have brought the relevant ordinance to the Court's attention. The absence of any evidence of such an exemption buoys Plaintiff's and Defendants Storage Office

Solution's and Alvinia Schoof's contention that Martz was not exempt from § 3353 and, therefore, not allowed to stop its busses on the shoulder of SR 115.

tricably tied to that of the truck's operator and Defendants Storage Office Solutions and Alvinia Schoof. Accordingly, Ryder's Motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions are both denied. The Court directs the parties to confer and submit a proposed scheduling order by November, 1 1998. This proposed order should include a discovery schedule, a date for submission of the pre-trial order, and a date for a post-discovery conference with the Court. The parties should also indicate the earliest date by which they anticipate that this case will be ready for trial. Upon receipt of such order, the Court will communicate with the parties to establish a trial date.

SO ORDERED.