Peter SHELDON, Conservator of the Estate of Thoburn Milar Stamm III and Cannon Nicholls Stamm, Minors, Plaintiff–Appellant–Cross–Appellee,

v.

PHH CORPORATION, a foreign corporation, successor to Avis Leasing Corp., f/k/a WE TRY HARDER, INC., Defendant–Appellee–Cross–Appellant.

Nos. 606, 607, Dockets 97–7453, 97–7385.

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1997.

Decided Feb. 2, 1998.

Andreas F. Lowenfeld, New York City (Gerald G. Paul, Elizabeth A. O'Connor, Kara H. Stein, Fleming, Zulack & Williamson, LLP, New York City, of counsel), for Plaintiff–Appellant–Cross–Appellee.

Beth J. Goldmacher, Westbury, NY (Frank J. Laurino, Faden & Goldmacher, Westbury, NY, on the brief), for Defendant–Appellee–Cross–Appellant.

Before: WALKER and JACOBS, Circuit Judges, and BRIEANT, District Judge.[*]

JACOBS, Circuit Judge:

The Stamm family, residents of New York, were in a collision while on a car trip to Michigan in 1985. Mr. Stamm was driving; Mrs. Stamm was critically injured. The accident was caused by another driver, who was driving a car leased from We Try Harder, Inc. ("WTH"). In 1986, the parents sued WTH in New York State Supreme Court, and reached a settlement of their claims. Ten years afterward, the two Stamm children (who are still minors) commenced the present litigation, through Peter Sheldon as conservator of their estate (hereinafter "plaintiffs"), asserting claims for loss of parental consortium and for physical and emotional injuries sustained in the accident. They named as defendant PHH Corporation, which they believed (erroneously) was the successor to WTH. When plaintiffs discovered that they had sued the wrong party, they moved to amend the complaint to substitute as a defendant the actual successor to WTH–PHH Vehicle Management Services Corporation ("PHH Vehicle"). PHH Corporation moved to dismiss and opposed the motion to amend. In dismissing the complaint against PHH Corporation and denying plaintiffs' motion to amend the complaint to substitute PHH Vehicle, the United States District Court for the Southern District of New York (Kaplan, J.) held that: (i) substituting PHH Vehicle as defendant on the loss of parental consortium claim would be futile because New York law does not recognize such a claim; and (ii) although plaintiffs' physical injury and emotional distress claims are viable, amendment would prejudice PHH Vehicle. See Sheldon v. PHH Corp., No. 96 Civ. 1666, 1997 WL 91280 (S.D.N.Y. Mar. 4, 1997).

On appeal, plaintiffs argue (i) that the loss of parental consortium claim is governed by Michigan law, which recognizes such a cause of action, rather than New York law, which does not; and (ii) that substitution of defendants would not have been futile. PHH Corporation cross-appeals, arguing that the district court erred in concluding that plaintiffs' physical injury and emotional distress claims were viable. For the reasons that follow, we affirm the judgment of the district court and dismiss the cross-appeal.

## BACKGROUND

On June 30, 1985, Thoburn Milar Stamm, Jr. was driving his family through Osceola County, Michigan. His three passengers were his wife, Marilyn Stamm, and their two children, plaintiffs Thoburn Milar Stamm III and Cannon Nicholls Stamm, who at the time were four years old and one-and-a-half, respectively. All were New York residents and the car was registered in New York. Their car was struck by an automobile driven by Dorothy Millbrook, a Michigan resident. Mrs. Stamm sustained serious and permanent brain injuries. The children have alleged that they suffered physical and emotional injuries.

Millbrook's car was registered in Michigan and was leased from WTH (a Delaware corporation with its principal place of business in Garden City, New York), which was a wholly owned subsidiary of Avis Leasing Corporation. WTH had leased the car through its New York office to Capital Distributing Company, Millbrook's husband's employer, for use in Michigan.

---

[*] Honorable Charles L. Brieant, of the United States District Court for the Southern District of New York, sitting by designation.

In 1986, Mr. and Mrs. Stamm sued WTH and the manufacturer of Millbrook's vehicle in New York State Supreme Court, Bronx County, seeking damages for Mrs. Stamm's injuries and for Mr. Stamm's loss of consortium. In 1991, the parties agreed to a structured settlement of $6.5 million.

In the meantime, WTH went through two corporate changes. In 1986, Avis Leasing Corporation sold all outstanding shares of WTH stock to PHH Holdings Corporation, a subsidiary of PHH Corporation; at the same time, WTH changed its name to Avis Leasing Corporation, and the former Avis Leasing Corporation changed its name to Avis Enterprises, Inc. Then in 1991, the new Avis Leasing Corporation (formerly WTH) merged into PHH Vehicle, so that the ultimate successor to WTH is PHH Vehicle. Both PHH Corporation and PHH Vehicle are incorporated in Maryland, and have their principal places of business there.

In April 1995, the Stamm children (through their father) filed suit against PHH Corporation in the United States District Court for the Eastern District of Michigan, seeking damages for loss of parental consortium and emotional pain and suffering pursuant to Michigan's owner liability statute.[1] Apparently, this complaint was never served. On June 9, 1995, the children filed an action (through Sheldon as the conservator of their estate) against PHH Corporation *and* their father in Wayne County Circuit Court, in Detroit, seeking the same relief as they had in the unserved federal complaint (with the addition of a claim for physical injuries the children suffered in the accident). In August 1995, the state court granted the defendant's motion to transfer that action from Detroit to Osceola County, Michigan, the place of the accident.

Plaintiffs then filed and served an amendment to their federal complaint, substituting Sheldon (in lieu of their father) as representative, and suing PHH Corporation only; the amended complaint sought damages for loss of parental consortium and for physical injuries and emotional pain and suffering resulting from the accident.

In January 1996, plaintiffs moved to change the venue of their lawsuit to the Southern District of New York pursuant to 28 U.S.C. § 1404(a); transfer was granted on February 28, 1996. At that point, the Michigan state action was discontinued without prejudice on consent of all parties.

In the course of discovery, plaintiffs learned that PHH Vehicle—not PHH Corporation—was WTH's successor, and therefore the only proper defendant. They moved on July 30, 1996, to amend the complaint to change the name of the defendant from "PHH Corporation" to "PHH Vehicle Management Service Corporation." Plaintiffs conceded that they had no claim against PHH Corporation, but asserted that no one would be prejudiced by an amendment naming the proper defendant. In response, PHH Corporation moved to dismiss the complaint against it, and argued that amendment would be futile because New York law (i) governs and (ii) does not recognize a cause of action for loss of parental consortium.

The district court dismissed the complaint against PHH Corporation and denied the motion for leave to amend. First, the district court concluded that New York substantive law would govern even under Michigan choice of law rules, and that substitution of PHH Vehicle for PHH Corporation therefore would be futile, at least as to the loss of parental consortium claim. *Sheldon*, 1997 WL 91280, at *7. Next, the district court found that because the accident occurred outside New York, New York's no-fault statute did not bar the action for physical injuries. *Id.* The district court also found that plaintiffs stated a claim for infliction of emotional distress, *id.* at *8, but as to these two claims, denied plaintiffs' motion to substitute PHH Vehicle as the defendant because PHH Vehicle would have been prejudiced by its inability to contest the transfer from Michigan to New York and because plaintiffs offered no valid explanation for initially suing the wrong party. *Id.* at *8–9.

## DISCUSSION

■ Typically, "[w]e review the denial of a motion to amend for abuse of discretion."

---

**1.** Because plaintiffs were minors at the time of the accident and have yet to reach the age of majority, the delay in filing this action presents no statute of limitations problem.

*Wake v. United States,* 89 F.3d 53, 57 (2d Cir.1996). However, insofar as the district court based its denial of the motion to amend on a conclusion of law—i.e., that New York law, and not Michigan law, governs plaintiffs' loss of parental consortium claim—that conclusion of law is subject to review *de novo.*

## I. The Appeal

 Plaintiffs sued PHH Corporation for loss of parental consortium, and sought leave to amend in order to assert the same claim against PHH Vehicle. Michigan recognizes a cause of action on behalf of a child for the loss of a parent's consortium. *See Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424, 427 (1981). New York does not. *See De Angelis v. Lutheran Med. Ctr.,* 58 N.Y.2d 1053, 1055, 462 N.Y.S.2d 626, 627, 449 N.E.2d 406, 407 (1983). Thus, to decide whether plaintiffs' assertion of such a claim against PHH Vehicle would be futile, as the district court concluded, we must determine which law governs.

 The threshold question is which state's choice of law rules apply. In a diversity case, a district court ordinarily determines the applicable state law by reference to the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). However, when a case has been transferred pursuant to 28 U.S.C. § 1404(a), even on plaintiff's own motion, a court will apply the law of the transferor forum, including that forum's choice of law rules. *See Ferens v. John Deere Co.,* 494 U.S. 516, 519, 110 S.Ct. 1274, 1277–78, 108 L.Ed.2d 443 (1990).

Although the transfer of this case from Michigan would seem to mean that Michigan law and choice of law rules apply, defendant argues that because plaintiffs are essentially seeking to drop the only defendant and add a new one, this action should be treated as a completely new case—i.e., as a case commenced in the Southern District of New York rather than one transferred from Michigan— and that New York choice of law rules therefore should apply. We need not decide this issue because the application of New York substantive law is required even if we use Michigan choice of law rules.

### A.

 Michigan determines the governing law in tort claims as follows:

> [A Michigan court] will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland v. Kennington Truck Serv., Ltd.,* 454 Mich. 274, 562 N.W.2d 466, 471 (1997) (citations omitted). In determining whether another state has an interest, the court must initially ask whether the foreign state, under its own choice of law rules, would apply its own law. *Id.* 562 N.W.2d at 473. So, for instance, in *Sutherland,* the Michigan court determined that an Ontario court would have applied the law of the place of the accident (Michigan) and concluded that Ontario lacked an interest in seeing its law applied. *Id.*

If the court determines that the foreign state has an interest in applying its own law, the court must consider what those interests are and balance them against Michigan's own interests, taking into account other factors such as the need for certainty and predictability and the prevention of forum shopping. *See Aetna Cas. & Surety Co. v. Dow Chem. Co.,* 883 F.Supp. 1101, 1110 (E.D.Mich.1995); *Isley v. Capuchin Province,* 878 F.Supp. 1021, 1023 (E.D.Mich.1995). Michigan will allow its law to yield to another law when there is a "rational reason" to do so, including if the foreign state's interests substantially outweigh Michigan's interest in the litigation. *See Isley,* 878 F.Supp. at 1023.

## B.

■ Following the analysis of *Sutherland,* we begin by looking to New York choice of law rules to determine whether New York would apply its own law here. "In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.,* 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001, 1002 (1994). When the conflict involves rules that *regulate conduct,* the law of the place of the tort governs. *Id.* at 522, 620 N.Y.S.2d at 311, 644 N.E.2d at 1002. The claim here, however, is one for loss of parental consortium—a loss-allocating, not conduct-regulating, rule. *See id.* at 522, 620 N.Y.S.2d at 312, 644 N.E.2d at 1003 ("Loss allocating rules . . . are those which prohibit, assign, or limit liability after the tort occurs. . . ."). When the conflict concerns a *loss-allocating* rule, the choice of law analysis is governed by the three principles articulated in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 128, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454 (1972). *See Padula,* 84 N.Y.2d at 522, 620 N.Y.S.2d at 312, 644 N.E.2d at 1003; *see also Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 72–73, 595 N.Y.S.2d 919, 923, 612 N.E.2d at 281 (1993); *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 201, 491 N.Y.S.2d 90, 98, 480 N.E.2d at 686–87 (1985).

■ *Neumeier* rules 1 and 3 are the only ones potentially applicable here. Rule 1 is that "[w]hen the [plaintiff] and the [defendant] are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the [defendant] owes to [the plaintiff]." 31 N.Y.2d at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 457. *Neumeier* rule 3 is that:

> [W]hen the [plaintiff] and the [defendant] are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of

the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Id.*

■ Defendant argues that *Neumeier* rule 1—and consequently New York law— applies here because the parties share a common domicile: plaintiffs are New York residents and WTH had its principal place of business in New York.[2] Plaintiffs argue that the domicile of a corporation is determined by reference to the state of incorporation, not its principal place of business, and that WTH therefore is domiciled in Delaware, not New York. Further, plaintiffs claim that because Millbrook was domiciled in Michigan, and Millbrook's vehicle was registered in Michigan, the case is not governed by *Neumeier* rule 1. This dispute only matters, however, if *Neumeier* rule 3 would result in application of Michigan law. We need not decide the question because even if *Neumeier* rule 3 governs, New York courts would still use New York law.

Although *Neumeier* rule 3 presumes application of Michigan law here, that presumption is overcome when applying New York law "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Id.* We conclude that applying New York law would have those salutary effects.

■ When the extent of victim compensation is at issue, the *plaintiff's* domicile has an interest in applying its law because that forum is where the loss is felt and where the burden of the victim's uncompensated needs may fall. *See, e.g., Pescatore v. Pan American World Airways, Inc.,* 97 F.3d 1, 14 (2d Cir.1996); *Burgio v. McDonnell Douglas,*

---

2. The parties do not seem to dispute that the relevant corporation for the purposes of determining PHH Vehicle's residence and interests is WTH, its predecessor, which was a Delaware corporation with its principal place of business in New York. In addition, to the extent that we

might consider PHH Vehicle's current domicile in this analysis, Maryland, its state of incorporation and the location of its principal place of business, does not recognize a cause of action for loss of parental consortium. *See Monias v. Endal,* 330 Md. 274, 623 A.2d 656, 661–62 (1993).

*Inc.,* 747 F.Supp. 865, 872 (E.D.N.Y.1990). Similarly, the location of *defendant's* headquarters has an interest in avoiding burdensome liability for entities that do business within its borders. In fact, New York has decided not to afford a recovery for loss of parental consortium in part to avoid the imposition of "tort liability almost without limit." *De Angelis,* 58 N.Y.2d at 1055, 462 N.Y.S.2d at 627, 449 N.E.2d at 407; *see also Pescatore,* 97 F.3d at 14. Here, both of these factors point to New York; plaintiffs are New York residents, and WTH was headquartered in New York.

Compared to these interests of its own, New York courts would view any interest Michigan may have as insignificant. Michigan affords a cause of action for loss of parental consortium in order to compensate children who have lost enjoyment of their parent's "love, companionship, affection, society, comfort, services and solace." *See Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424, 426 (1981). But Michigan can have no appreciable interest in securing that recovery for little New Yorkers. *Cf. Chila v. Owens,* 348 F.Supp. 1207, 1210 (S.D.N.Y.1972) (Weinfeld, J.). Michigan's sole relevant connection to this case is that the accident occurred there.[3] However, "[u]nder New York's choice of law rules, when conflicting rules concern the allocation of loss rather than the regulation of conduct, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy." *Pescatore,* 97 F.3d at 13 (citations and internal quotation marks omitted); *see also AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 270 (2d Cir.1992). A New York court would likely conclude that application of New York law would advance the relevant substantive law purposes because New York is the only state with an important interest in applying its law.

We must also ask whether applying New York law will impair the smooth working of the multi-state system. We think that New York's interests are so weighty that most jurisdictions likely would apply New York law. Doing so will also contribute to the smooth working of the multi-state system by discouraging forum shopping. Plaintiffs conceded in their opposition to defendant's motion for a stay pending disposition of the state suit that they filed suit in Michigan (an inconvenient forum as demonstrated by their own motion to transfer) solely to take advantage of its more favorable law: "The case had to be filed in Michigan, where the accident occurred, because it is a claim for damages for loss of parental consortium, which is recognized by Michigan law."

## C.

■ Because New York courts would apply New York law to plaintiffs' loss of parental consortium claims, Michigan's choice of law rules require that we compare New York's interests with those of Michigan in order to see whether there is a "rational reason" not to apply Michigan law. *See Best v. Dante Gentilini Trucking, Inc.,* 778 F.Supp. 360, 364 (E.D.Mich.1991) ("If the foreign state does have an interest, a court's second duty is to determine whether reason requires that the law of the foreign state displace that of the forum state.") (citations and internal quotation marks omitted).

We conclude that a Michigan court would find that New York's interest in applying its law to plaintiffs' loss of consortium claims vastly outweighs any interest of Michigan, that application of New York law in these circumstances would advance other goals such as prevention of forum shopping, and that a "rational reason" exists to set aside the presumption that Michigan law governs.[4]

---

**3.** Although plaintiffs reference other contacts with Michigan, such as the fact that Millbrook resided and had her car registered there, they do not explain why those contacts give Michigan an interest in applying its law to plaintiffs' loss of parental consortium action against defendant. *See Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95, 480 N.E.2d at 685 (1985) ("[T]he [only] facts or contacts which obtain significance in defining State

interests are those which relate to the purpose of the particular law in conflict.") (citations and internal quotation marks omitted) (alterations in original).

**4.** Although the following analysis touches on some of the same factors mentioned above in the New York choice of law analysis, here we look at those factors through the eyes of a Michigan court applying Michigan choice of law rules.

A Michigan court would likely conclude that Michigan lacks any substantial interest in permitting these plaintiffs to recover for loss of parental consortium. As one court has noted in interpreting Michigan choice of law rules, "[W]here [a] statute is designed to protect local interests, there is no reason to extend its benefits to a nonresident whose state has no similar statute." *Mahne v. Ford Motor Co.*, 900 F.2d 83, 87 (6th Cir.1990). Michigan's loss of parental consortium cause of action is intended to benefit Michigan residents by allowing them additional recovery; but neither party here is a Michigan resident.

Nor would a Michigan court attach over-arching importance to the fact that the accident occurred in Michigan. In *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987), the plaintiff, a resident of Minnesota, sued the defendant, a Michigan domiciliary, for claims arising out of a car accident in Wisconsin. The Supreme Court of Michigan concluded that Wisconsin, the location of the accident, had no interest in applying its law limiting damages in wrongful death actions: "The operative fact is that neither party is a citizen of the state in which the wrong occurred. Since neither party in this case is a citizen of Wisconsin, that state has no interest in seeing its limitation of damage provision applied." *Id.* 400 N.W.2d at 304. The court added that although the state in which the accident happened may be interested in having its conduct-regulating statutes brought to bear on non-residents, "[t]he state of the place of the wrong has little or no interest in ... compensation when none of the parties reside there." *Id.* (citation omitted); *see also Mahne*, 900 F.2d at 87; *Best*, 778 F.Supp. at 365; *Burney v. P V Holding Corp.*, 218 Mich.App. 167, 553 N.W.2d 657, 659 (1996), *appeal denied*, No. 108376, 572 N.W.2d 9 (Mich. Dec. 9, 1997).

Michigan courts would consider New York's interests strong because plaintiffs are residents of New York and WTH had its principal place of business in New York. As one Michigan court has noted, "Michigan has no interest in affording greater rights of tort recovery to a [foreign] resident than those afforded by [the foreign state]." *Farrell v.*

*Ford Motor Co.*, 199 Mich.App. 81, 501 N.W.2d 567, 572 (1993). Furthermore, Michigan courts have recognized that the defendant's domicile has a substantial interest in limiting exorbitant damage awards. *See id.* (noting that place where defendant maintained headquarters "has an obvious and substantial interest in shielding [defendant] from open-ended ... claims").

Finally, this case raises the forum shopping concerns addressed in *Olmstead:*

> The concern surrounding forum shopping stems from the fear that a plaintiff will be able to determine the outcome of a case simply by choosing the forum in which to bring the suit.... raising the fear that applying the law sought by a forum-shopping plaintiff will defeat the expectations of the defendant or will upset the policies of the state in which the defendant acted (or from which the defendant hails).

*Olmstead*, 400 N.W.2d at 303 (citations and internal quotation marks omitted). *Olmstead* warns that suspicion of forum shopping should be aroused "when the plaintiff foregoes the economies afforded by bringing suit at home," and when jurisdictional issues do not explain this litigation decision. *Id.* (citations and internal quotation marks omitted). As noted, plaintiffs chose to sue in Michigan, an inconvenient forum to which they have no real connection.

Where as here, Michigan's only relevant connection to the claim is the place of collision, and the plaintiff ventured far from home to sue there, only to seek transfer on the ground that Michigan is an inconvenient forum, a Michigan court would likely find that New York's strong interests and the need to discourage forum shopping constitute "rational reasons" to apply New York law. Accordingly, New York law governs plaintiffs' claims for loss of parental consortium, and the district court did not err in finding that plaintiffs could not state a claim for loss of parental consortium against PHH Vehicle.

## II. The Cross–Appeal

In considering plaintiffs' motion for leave to amend, the district court gave consideration to the viability of the claims sought to be pleaded. The cross-appeal of defendant PHH Corporation challenges two

of those rulings: (i) that because the accident occurred outside New York, "the New York no-fault law and its 'serious injury' threshold for personal injury claims do not apply in this case," *Sheldon*, 1997 WL 91280, at *7 (citations omitted), and the claim is therefore governed by New York common law; and (ii) that the emotional harm claim was legally sufficient because the plaintiffs were in the zone of danger when their mother was injured. The district court nevertheless denied plaintiffs' motion for leave to substitute PHH Vehicle on the grounds that: (i) PHH Vehicle would be prejudiced by this late addition as it was "afforded no opportunity to contest the motion for transfer in Michigan [and] the district court in Michigan [did not] assess the propriety of a transfer in regard to [PHH Vehicle]"; and (ii) plaintiffs offered no valid explanation for their error in suing the wrong party. *Id.* at *8–9.

We have no jurisdiction to consider this cross-appeal. The only named defendant is PHH Corporation, which has no standing to appeal the district court's decision. "[A] prevailing party cannot appeal from a district court judgment in its favor." *Ashley v. Boehringer Ingelheim Pharmaceuticals (In re DES Litigation)*, 7 F.3d 20, 23 (2d Cir.1993) (hereinafter *"In re DES Litigation"*); *see also Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't of Environmental Conservation*, 127 F.3d 201, 204 (2d Cir.1997). The court *granted* PHH Corporation's motion to dismiss the complaint because it is not the real party-in-interest and plaintiffs have no claim against it. The district court's conclusions relating to the physical injury and emotional distress claims cannot affect PHH Corporation.

PHH Vehicle does face potential legal liability on the physical injury and emo-

tional distress claims, but that entity is not a party to this case: it was not named in the complaint (in fact, that was the whole point of the motion to amend) and it did not intervene.[5] "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (1988) (*per curiam*). Defendant's cross-appeal therefore must be dismissed.[6]

## CONCLUSION

The judgment of the district court is affirmed and defendant's cross-appeal is dismissed.

---

5. Defendant's notice of appeal purports to be on behalf of PHH Vehicle as well:

NOTICE IS HEREBY GIVEN that the defendant, PHH Corp., named in the caption as PHH Corp., successor to AVIS LEASING CORP., f/k/a WE TRY HARDER, INC. [*and, if warranted, PHH Vehicle Management Services Corp.*] hereby cross-appeals. . . .

(emphasis added) (alterations in original). But the notice of appeal cannot by itself confer standing on PHH Vehicle. We note also that even if PHH Vehicle was a party to this appeal, it still would not have standing to appeal the district

court's ruling; PHH Vehicle succeeded in precluding plaintiffs from amending the complaint and the district court's conclusions relating to the physical and emotional injury claims have no preclusive effect because they were unnecessary to the judgment. *See, e.g., In re DES Litigation*, 7 F.3d at 23.

6. Plaintiffs have not appealed the district court's finding that prejudice to PHH Vehicle precluded amendment of the complaint to substitute PHH Vehicle as a defendant on the physical injury and emotional distress claims.